CRISTY & SÁNCHEZ, ETC., Plaintiff and Appellant, *v*. THE COMMONWEALTH OF PUERTO RICO ET AL., Defendants and Appellees.

No. 12484.   Decided December 21, 1961.

*Enrique Igaravídez* for appellant. *J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella* and *Luis Venegas Cortés, Assistant Secretaries of Justice,* for the Commonwealth of Puerto Rico.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On February 3, 1948, Ángel (2) Silva, Public Works Superintendent of the former Department of the Interior of the former Government of Puerto Rico, and Fongora Corporation entered into a public-works contract for the construction of a bridge on the Yagüez River of the Municipality of Mayagüez, which was countersigned on February 12, 1948, by the former Commissioner of the Interior of Puerto Rico. With the approval of the Superintendent of Public Works, contractor Fongora Corporation subcontracted with the plaintiff-appellant, Cristy & Sánchez, for the furnishing, installation, and supervision of all the electric material required in the contract. The bonds required for the faithful performance

of the contract and for the payment of materials and labor used in the work were given by the codefendant, United States Fidelity and Guaranty Company. It is a stipulated fact that the other contracts involved in this action are identical with that herein described.

The subcontractor complied fully with the subcontract furnishing the materials and the labor and supervising the installation of the electric system. Having failed to receive payment for its work because of the contractor's bankruptcy, it judicially demanded payment from the Commonwealth of Puerto Rico, successor at law of the former Government of Puerto Rico, and from the surety company. The Commonwealth alleged (1) that since it was not a party to the contract between the subcontractor and the contractor, it was not bound to pay, and (2) that assuming that the subcontractor had a cause of action against the Commonwealth arising prior to Act No. 104 of June 29, 1955 (Sess. Laws, p. 550), authorizing claims and suits against the Commonwealth, the latter had not given its consent to be sued. The surety company in turn alleged (3) that the bonds had been issued in favor of the Commonwealth and not of the subcontractors or other persons, and that it was not therefore liable for the payment of the electric materials and labor claimed by the subcontractor. The trial court agreed with the objections to the cause of action alleged by both defendants and dismissed the complaint summarily.

1. The contract entered into recognized the contractor's right to subcontract or to assign part of the contract. See item 19(b) (page 9), subdivision IV (page 15), and subdivision VI (page 19) of the specifications; item 1.22 (page 4), item 8.1 (page 31), and item 8.4 (page 34), of the General Specifications for Public Works Contracts. Both the specifications and the General Specifications authorize the subcontract or assignment upon approval by the Public Works Superintendent, and the subcontractor is bound to perform

his part of the work with the same skill and under the same conditions as the contractor—item 8.1 (page 31), noted above.

■ 2. We do not stop to consider the possible immunity of the Commonwealth in this type of actions. As a matter of reality, the Commonwealth is in this action an instrumental party because of the subsidiary character of the bond. Incidentally, these bonds are required to protect the Commonwealth against any direct claim for nonpayment of the materials or labor. Regarding the Commonwealth's liability for contracts executed by public corporations, see *Keifer & Keifer* v. *Reconstruction Finance Corp.*, 306 U.S. 381, 388–92; 83 L.Ed. 784, 788–90 (Frankfurter, 1939).

3. In every public-works contract executed in Puerto Rico, the contractor is required to secure the faithful performance of the construction contract (*performance bond*) and the payment of the materials and labor which he may use or employ in the construction (*labor and material bond*). The Commonwealth thereby protects itself against the abandonment of any public work by the contractor and, as stated above, against claims against the Commonwealth for materials and labor which the contractor may fail to pay. See item 1.5 (page 1), item 1.14 (page 3), and item 3.4 (page 9) of the General Specifications.

■ The General Specifications for the Contracting of Public Works adopted on March 14, 1946, require a bond to secure "the prompt payment of labor, equipment, and materials necessary for the execution of the work." The General Specifications as well as the bond form part of the public-works contract—§ 426 of the Political Code of Puerto Rico and item 1.5 (page 1) of the General Specifications. As a matter of fact, both documents are embraced in the contract under consideration.

■ The bond given in a public-works contract in Puerto Rico partakes of the nature of a statutory bond—in this case the General Specifications—and of a contract bond.

Hence, the description of the parties actually guaranteed must be read into the statutory provision and the terms of the contract as well as into the bond instrument, since taken together they form a single instrument. 43 Am. Jur. 891 (first paragraph) and 892 (first paragraph), §§ 148 and 149. As a matter of law, the bond is not given in favor of the Commonwealth but of the persons furnishing the materials and labor. 43 Am. Jur. 893 (first paragraph), § 155. Where policies are required by statutory provision, the statute is considered as forming part thereof. *González* v. *Santos*, 75 P.R.R. 883, 885 (Ortiz, 1954); *U.S. Casualty Co.* v. *Sup. Court; Gayá et al., Ints.*, 79 P.R.R. 802, 808 (Pérez Pimentel, 1957). A similar principle applies to bonds. It is not therefore necessary that each and every one of the persons thereby guaranteed be named in the bond instrument, since such persons are duly described in the applicable legal provisions or in the terms of the contract secured. 43 Am. Jur. 896, § 155.

We ought to be fair with the trial court and accept that its conclusion that there is no contractual relation between the sureties and the furnishers of materials and labor, is based on our previous decisions in the cases of *Municipality of Fajardo et al.* v. *Axtmayer et al.*, 31 P.R.R. 780 (1923); *Morales* v. *Chabert*, 43 P.R.R. 114 (1932); *Battle* v. *Pereyó*, 67 P.R.R. 621 (1947), and on our judgment of December 21, 1953, in the case of *The People of Puerto Rico*, now the *Commonwealth of Puerto Rico*, plaintiff-appellant v. *United States Fidelity & Guaranty Company*, defendant-appellee, civil No. 10845.

In the case of *Municipality of Fajardo* v. *Axtmayer*, a contract was entered into between the Commissioner of the Interior and Axtmayer for the construction of a public building. The contract contained a bond in favor of the Commissioner of the Interior, similar to that under consideration. It seems that the Municipality of Fajardo sued Axtmayer

and the sureties to recover the payment of certain materials sold by J. Ochoa & Hermano which were used in the work. It was held that there was no privity between the sureties and J. Ochoa & Hermano (p. 785). The only authority cited is an opinion of the Attorney General of Puerto Rico making reference to a case decided by the Supreme Court of the Philippine Islands.

In the case of *Morales* v. *Chabert*, contractor Chabert entered into a public-works contract with the Municipality of Carolina and executed a bond with two other persons in favor of the municipality, wherein it was stated that all persons furnishing materials and labor would be promptly paid. Morales sued contractor Chabert and his sureties to recover the value of certain materials furnished to the contractor for the said work. Applying the case of *Municipality of Fajardo* v. *Axtmayer*, it was held that a clause in a bond in favor of a municipality can not be construed as a stipulation *pour autrui*, and that the absence of adequate words to the effect that the bond was likewise executed for the benefit of the materialmen showed that there was no clear intention on the part of the contracting parties of stipulating for the benefit of the materialmen; that according to our Civil Code, the suretyship must be express and forbids its extension beyond its specified limits; that the question was governed by the Civil Code and not by the Political Code, since the latter "does not state that those who furnish materials or labor for any public works shall be entitled to recover from the sureties" (pp. 116 and 117). Mr. Justice Hutchison dissented.

In the case of *Battle* v. *Pereyó*, contractor José Pereyó entered into a contract with the Department of the Interior for the construction of a public work, and together with Juan Torrellas and Luis Pereyó gave a bond in favor of The People of Puerto Rico. Contractor Pereyó entered into another contract with plaintiff Horacio Battle to furnish the stone, the

gravel, and the sand needed in the construction of the work, and owed him a certain amount for those materials. Battle sued the contractor and his sureties. The court rendered judgment against Pereyó and exonerated the sureties from payment.

The grounds for denying the petition against the sureties were as follows: (1) in Puerto Rico security is not presumed; it must be express and can not be extended further than that specified, and it should be strictly construed (p. 624); (2) that the fact that the materialmen were not included in Act No. 31 of April 23, 1931 (Sess. Laws, p. 340), giving to the laborers and employees a direct action against the contractor and his sureties, indicated the legislative intention to consider those materialmen as not being a party to the public-works contract (p. 625). The judgment of December 21, 1953, in the case of *The People of Puerto Rico*, now *Commonwealth of Puerto Rico* v. *United States Fidelity & Guaranty Company*, does not adduce any grounds other than a mere reference to the case of *Battle* v. *Pereyó*.

Summing up, our previous authorities held that, considering the bond instrument isolatedly, there was no privity between the sureties and the materialmen and labor contractors—*Municipality of Fajardo* v. *Axtmayer*—in the absence of adequate recitals in the bond instrument to the effect that the latter was executed also in favor of materialmen and labor contractors, and considering the relationship of the bond with the legal provisions in force governing the public-works contract, it is held that, since the Political Code of Puerto Rico did not state that those who furnish the materials or labor for public works would be entitled to recover on bonds, the sureties were not liable—case of *Morales* v. *Chabert*—that inasmuch as the materialmen were not included in Act No. 31 of April 23, 1931 (Sess. Laws, p. 340), the legislative intention was evidently to exclude them from

the security, particularly since according to the Civil Code of Puerto Rico the bond must be express—case of *Battle* v. *Pereyó*.

■ It is well to clarify that all the bonds involved in these three cases are prior to the promulgation of the General Specifications of March 14, 1946, and it must be presumed that the General Specifications which governed at the time the contract object of this action was executed were not considered in any of those three cases. We do not stop to consider whether the previous General Specifications decreed by the Spanish Government on June 11, 1886, or any subsequent one, have served as a proper legislative basis for the decision of the former cases. However, from and after 1946, those General Specifications must be treated as a statute regulating the public-works contract because it is an administrative regulation prepared by a competent officer by virtue of express legislative delegation—§ 426 of the Political Code of Puerto Rico. It is also evident that the need for considering jointly the texts of the bonds and the terms of the contracts was not considered in the three former cases.

■■ Therefore, considering jointly the bond instrument, the General Specifications, and the public-works contract, there can be no question that there is a contractual relationship between the surety company and the persons furnishing the building materials and the labor, including among the latter any subcontractor accepted by the Public Works Superintendent. In general terms, it may be said that when in a public-works contract the contractor is permitted to assign or subcontract part of the work, the subcontractor may recover on the bond given for the benefit of the Commonwealth the price of the materials and the payment of labor used or employed in the construction of the part of the work entrusted to him. 43 Am. Jur. 894, § 152; 118 A.L.R. 81; 77 A.L.R. 148. Although our Political Code does not state that the bond shall be liable for the payment of the materials

and labor, such provision is set forth in the General Specifications promulgated on the authority of that Code to cover the specific situation of the public-works contract and as such enjoys the category of a special provision in our civil legislation. It is known that in matters which are the subject of special laws, any deficiency in such law shall be supplied by the civil provisions. Section 12 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 12.

There is no question that the inclusion in the provisions of a special regulation or in the context of a contract of certain guarantees for the benefit of innominate persons whose names are not known at the time of signing the contract, does not come within the deficiencies which must be supplied by the Civil Code. That is why the civil principle that the bond must be express can not be applied to this type of guaranty. The situation is a special one which is covered by a special regulation which has the force of law between the parties. Similarly, the strict construction of the bond is not controlling in a situation such as this.

The strict construction was controlling at a time when the personal bondsmen, by a mere act of liberality, secured the public-works contract, but it lost its popularity with the advent of surety companies making a business of acting as surety for compensation. Regarding a public-works bond, it may be said that, contrary to the general assumption, the liberal or strict construction is controlling— 43 Am. Jur. 890–92, §§ 148 and 149; 77 A.L.R. 42—as long as the obligation to pay is maintained within the contract limits, that is, that it does not cover materials or labor which are not necessary or are not used directly in the work.

After the decision in the case of *Cámara Insular, Etc.* v. *M. Anadón, S. en C.*, 83 P.R.R. 360, 365 (Blanco Lugo, 1961), there is no discharge of any kind in favor of the insurance company because of the fact that the contractor became a bankrupt. Although the contractor may be released from

liability in the bankruptcy proceeding, the surety company is not exonerated.

For the reasons stated, the cases of *Municipality of Fajardo* v. *Axtmayer et al.*, 31 P.R.R. 780 (1923); *Morales* v. *Chabert*, 43 P.R.R. 114 (1932); *Battle* v. *Pereyó*, 67 P.R.R. 621 (1947); and *Commonwealth of Puerto Rico* v. *United States Fidelity & Guaranty Company*, are expressly overruled in so far as they are at variance with the reasoning in this opinion. Likewise, the summary judgment rendered by the Superior Court, San Juan Part, on March 14, 1957, will be reversed and the case remanded for further proceedings not inconsistent with the terms of this opinion.